IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| DANIEL HERRON,<br><br>　　Plaintiff,<br><br>v.<br><br>TEARS OF EDEN, KATHERINE SPEARING, LLC, KATHERINE SPEARING (IN HER INDIVIDUAL CAPACITY), TINA SHIM, MARIE GRIFFITH, and JEANA ROTH,<br><br>　　Defendants. | Case No. 4:24-CV-00425-MTS<br><br>**Jury Trial Requested** |

## SECOND AMENDED COMPLAINT FOR DAMAGES

Pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, Plaintiff Daniel Herron ("Herron" or "Plaintiff"), by counsel, states as follows for his Second Amended Complaint for Damages against Defendants, Tears of Eden, Katherine Spearing, LLC, Katherine Spearing (in her individual capacity) ("Spearing"), Tina Shim, Marie Griffith, and Jeana Roth (collectively, "Defendants"):

### Introduction

This is an egregious case of cancel culture run amuck. Each of the Defendants played a role in attacking Herron, Herron as a pastor, and then Herron's church, the Presbyterian Church in America, in a wide-ranging social media campaign of letters, emails, posts, and possibly more than has yet been discovered to date.

### PARTIES

1.　Herron is an individual residing in Hamilton County, Indiana.

2. Tears of Eden is an organization that initially operated as an unincorporated association. The association members consisted of Tears of Eden's board of directors—Katherine Spearing, Tina Shim, Jeana Roth, and Marie Griffith.

3. Katherine M. Spearing is an individual residing at 4041 Chouteau Avenue, Unit 351, St. Louis Missouri, 63110-1728.

4. Tina Shim is an individual residing at 3045 Reid Ave, Culver City, California, 90232.

5. Jeana Roth is an individual residing at 1503 Montgomery St, Urbana, Illinois 61802.

6. Marie Griffith is an individual residing at 1209 Griffin Rd NW, Hartselle, Alabama, 35640.

7. Tears of Eden eventually became incorporated under Missouri law.

8. Tears of Eden is currently a Missouri Non-Profit Corporation with its principal place of business at 4041 Choteau Ave, Unit 351, St. Louis, Missouri, 63110-1728.

9. Katherine Spearing, LLC is a Missouri Limited Liability Company with its principal place of business at 4041 Chouteau Avenue, Unit No. 351, St. Louis, Missouri 63110-1728.

**JURISDICTION AND VENUE**

10. This Court has jurisdiction and venue over the Defendants by virtue of the transfer Order of the District Court of the Southern District of Indiana in this action.

11. Defendants Tears of Eden, Katherine Spearing, LLC, and Katherine Spearing each appear to reside or maintain their principal offices in this District.

12. This Court also has jurisdiction under 28 U.S.C. §1332 and 28 U.S.C. §1446.

13. Herron is an Indiana citizen.

14. Defendants Tears of Eden, Katherine Spearing LLC, and Katherine Spearing are Missouri citizens.

15. Defendant Tina Shim is a California citizen. Ms. Shim served as President of Tears of Eden while it was a Missouri nonprofit corporation. She also served on the board of directors of the Tears of Eden and ratified Tears of Eden's conduct while it was a Missouri nonprofit corporation. As such, she has availed herself to the jurisdiction of Missouri courts.

16. Defendant Jeana Roth is an Illinois citizen. Ms. Roth served as Treasurer of Tears of Eden while it was a Missouri nonprofit corporation. She also served on the board of directors of the Tears of Eden and ratified Tears of Eden's conduct while it was a Missouri nonprofit corporation. As such, she has availed herself to the jurisdiction of Missouri courts.

17. Defendant Marie Griffith is an Alabama citizen. Ms. Griffith served on the board of directors of the Tears of Eden and ratified Tears of Eden's conduct while it was a Missouri nonprofit corporation. As such, she has availed herself to the jurisdiction of Missouri courts.

18. Thus, there is complete diversity of citizenship.

19. This action is based on a course of conduct by Defendants that caused damage, loss, and injury to Herron.

## STATEMENT OF FACTS

20. Plaintiff Daniel Herron has suffered immensely in both his personal and professional life due to the Defendants' actions.

21. Herron is an ordained Teaching Elder in the Presbyterian Church of America ("PCA") who founded and served as a Presbyterian Minister at Hope Presbyterian Church PCA ("Hope Presbyterian") in Bloomington, Indiana.

22. Through his pastoral duties and ministry at Hope Presbyterian, Herron interacted with certain individuals, namely, Kara Million ("Kara") and Abigail Gschwend-Harris ("Harris") who ultimately pursued a campaign of harassment against Herron (collectively, Kara and Harris will be referred to herein as the "Accusers"), and falsely alleged that Herron directed sexual and predatory misconduct towards them.

23. Defendant Spearing invited these Accusers – who were Indiana residents at the time – to talk on a Podcast dubbed the "Uncertain Podcast," which included a three-part series entitled the "Wicked Pastor of the Midwest" (Parts 1, 2, and 3 of the Podcast may be referred to herein as the "Podcast" or "Podcasts").

24. As Spearing admitted, she did not do any due diligence or inquiry into any of the many available fact witnesses in Bloomington before she joined in on the attack against Herron.

25. At or around the time of the Podcasts, Katherine Spearing, Tina Shim, Jeana Roth, and Marie Griffith were association members of Tears of Eden. They each served in various roles during their tenures with Tears of Eden.

26. For example, Ms. Shim served as the President, Ms. Roth served as the Treasurer, and Spearing served as the Secretary.

27. Spearing, Ms. Shim, Ms. Roth, and Ms. Griffith ("the Board") served as directors of Tears of Eden.

28. The Board failed to enact any journalistic standards or procedures to ensure that Tears of Eden's publications were factually accurate or otherwise credible accountings.

29. Furthermore, the Board specifically failed to investigate the accusations against Herron and failed to properly supervise and train Spearing in conducting editorial due diligence.

4

30. On or before May 18, 2021, Part 1 of the Podcast entitled "Flying Monkeys with Kara Million and Abigail Harris" appeared on a website maintained and crafted by Spearing, which contained, amongst other things, and including the Podcast description, the following statements:

(a) That Herron is "wicked" as a result of the false allegations of sexual and predatory misconduct;

(b) "Soon the two women—who had both been targets of the pastor's sexual pursuits—realized this was a pattern…";

(c) "Well, I would love to hear, yeah just your story in your own words, you were at a church, Kara, you started experiencing some inappropriate behavior from a pastor";

(d) "Oh for sure. Oh for sure" – in response to TE Herron participating in a "grooming tactic";

(e) "After this meeting, Dan started behaving strangely, including cornering Kara at events, having secret meetings about Kara and placing her in the small group of one of his henchmen who will be referred to as his biblical counselor";

(f) "Kara blocked Dan on Facebook, but she eventually discovered he was accessing her content through other people. Dan had a handful of people operating as his flying monkeys, running his shadow government";

(g) "He's paranoid. He's paranoid" – In response to a post Kara made about a book she'd recently read;

(h) "That is so inappropriate for anyone, but especially a pastor" – regarding a comment TE Herron made about going to the gym.

5

31. Remarks contained in Part 1 of the Podcast are false, disparaging, and defamatory.

32. On or before May 25, 2021, Part 2 of the Podcast appeared on a website maintained and crafted by Spearing, entitled "Lions, Tigers, and Bears with Kara Million & Abigail Harris," and contained, amongst other things, the following statements:

    (a) That Herron is "wicked" as a result of the false allegations of sexual and predatory misconduct;

    (b) "It's so frustrating because this alone is enough to cause anyone concern that if he receives accusations and then preaches an inflammatory sermon right after it, there is something wrong, just with that";

    (c) "So right away, they were on Dan's side basically?";

    (d) "Ok Dan, I could be wrong, but an eighteen-page document in your own defense naming all the victims who asked to remain anonymous doesn't really sound like issuing a blessing. But seriously, I could be wrong";

    (e) "And you're dealing with this, but then you're also the ones who were traumatized. So, you're dealing with that and then you're dealing with these 8 months of stress and having to be your own defense on top of the trauma you have already experienced in this church";

    (f) "That's a classic, classic just discredit the victim";

    (g) "You're making me cry. Uhm…I'm just so grateful to hear that because I feel like so often, like, we hear these stories after the success has happened. You know, like, after the justice has happened, and you guys have very much not experienced justice and have gone through so much, but you still think it's worth fighting, not just for each other, but for other victims, and I

am just so grateful to hear that. And it's encouraging to me, and I hope it encourages other listeners that justice is worth fighting for."

33. Remarks contained in Part 2 of the Podcast are false, disparaging, and defamatory.

34. On or before June 1, 2021, Part 3 of the Podcast appeared on a website maintained and crafted by Spearing, entitled "Behind the Curtain," and contained amongst other things, the following statements:

(a) "Well yeah and like the whole grandiose personality type of narcissist, like he's like, he's totally exhibiting it publicly for sure";

(b) "Well you guys have just been doing this for so long and this has been a huge burden that you've been carrying, advocating for yourselves, butting for yourselves and also having experienced the trauma of his abuse on top of that";

(c) "But when witnesses are willing to come forward, victims, 'cause you guys are victims, not just witnesses, come forward and put your name on it, like, that is where progress happens…."

35. Remarks contained in Part 3 of the Podcast are false, disparaging, and defamatory.

36. Part 3 of the Podcast arose out of a second interview of the Accusers by Spearing, and was directed at the PCA and the judicial process of the church trial that had been scheduled following Parts 1 and 2 of the Podcast, and thus attacked no only Herron but also his church, his Presbytery, the PCA, and witnesses who would testify about the facts (who were never interviewed by Spearing).

37. Spearing engaged in her own personal crusade concerning these podcasts and other attacks on Herron and his church in 2021.

7

38. Defendants have tried to cloak their activities using different entities or corporate forms to avoid responsibility for their actions.

39. On or about August 9, 2021, Tears of Eden filed its Articles of Incorporation of a Nonprofit Corporation in the state of Missouri. In doing so, Tears of Eden improperly transitioned from an unincorporated association to a nonprofit corporation.

40. Tears of Eden did not wind down or cease its operations as an unincorporated association. It also did not draw any corporate distinctions between the unincorporated association and nonprofit corporation.

41. For example, Tears of Eden used the same Tax Identification Number when it operated as an unincorporated association and nonprofit corporation.

42. In a board meeting conducted on August 18, 2021, the Board unanimously and explicitly approved of "All actions" by Tears of Eden. This approval included the Podcasts at issue and the damaging social media crusade at issue in this litigation.

43. Through its corporation action, Tears of Eden fully and completely adopted Spearing's allegations regarding Herron as its own and affirmed its failure to supervise and monitor Spearing's damaging conduct.

44. In addition to adopting the Podcast as its own and putting the Podcast on its website in 2021 and throughout 2022 and portions of 2023, Tears of Eden also posted it, among other places, to the Uncertain Podcast social media accounts, including Instagram, and features the Accusers and their content.

45. Spearing, in her individual capacity, also posted a link to the Podcast on her personal Facebook account, which also features the Accusers and their content.

46. Upon information and belief, Katherine Spearing LLC ("Spearing's LLC") also played a role in attacking Herron and his church.

47. Herron did not engage in any sexual misconduct or impropriety of any kind.

48. No accusation exists that the Accusers found themselves confronted with a demand for sexual favors, or any sort of *quid pro quo* proposition.

49. No statement exists indicating that the Accusers shared with Herron at any time that any of his actions stood as unwelcomed.

50. At no time did the Accusers present any allegation of severe or pervasive sexual comments, jokes, or innuendo.

51. At no time did the Accusers present any allegation nor any assertion of sexual touching beyond describing events that could easily have been incidental contact without sexual intent.

52. In fact, Herron never sought any sex act, sexual contact, nor possessed any sexual interest in the Accusers.

53. Herron has never been unfaithful to his wife, nor previously accused of any sexual misconduct of any type.

54. The Accusers have each since signed formal statements, under oath, that confirm their allegations of sexual harassment were false and embellished.

55. While a number of the claims asserted stand as demonstrably false, even if true, they fail to constitute a legally recognized claim of sexual harassment. Despite this, Defendants adopted as true the accusations of both Accusers regarding alleged sexual and predatory misconduct and indicated in their statements that Herron, among other things, engaged in "*sexual*

9

*harassment*" against the Accusers, that the Accusers were "victims" of Herron, and that the Accusers were subject of "abuse" by Herron.

56. These repeated accusations are particularly heinous and devastating for a minister.

57. Defendants' remarks are false, disparaging, and defamatory.

58. Herron is not and was not a public figure.

59. On May 4, 2023, counsel for Herron, sent a letter to Tears of Eden, Spearing's LLC, and Spearing demanding that they (1) publish a full and fair retraction of all false statements made regarding TE Herron on the three-part "Wicked Pastor of the Midwest Podcast'" and (2) remove the Podcast at tissue from all sites where the Podcast is accessible to the public, including, but not limited to, the Tears of Eden website, Spotify, and Apple Podcasts.

60. On the same date, counsel for Herron also sent a tolling agreement in order to enter into an agreement to toll the statute of limitations and attempt to resolve this issue without litigation. The tolling agreement was never returned, thus forcing Herron to file his Complaint at that time.

61. As of the date of filing the original Complaint, it appeared that the Podcasts have been removed from the Tears of Eden website. However, a full and fair retraction has not been made. In addition a description of the Podcast still appears on the website in, *at least*, a section entitled the "Most Popular Episodes from 2021" in which Katherine Spearing writes that the Tears of Eden "audience is interested in learning about abuse in churches" and describes the Accusers as having been "**targets of the pastor's sexual pursuits**." (Emphasis added.) A true and accurate screen shot of the website as accessed by Herron's counsel on May 12, 2023, is pictured here:



62. Upon information and belief, and from documents previously obtained, it appears that Spearing, Spearing's LLC, and/or Tears of Eden engaged in additional disparagement of Herron and attacks on Herron's church, church leaders, and the PCA's handling of the matter in 2022 and 2023, including suggesting that Million and/or Harris were Herron's "victims" and similar comments and representations in the course of their publications and dealing with various third parties.

63. Specifically, in July 2022, Tears of Eden sent an email to one of the Accusers announcing the opening of its online community for survivors of spiritual abuse.

64. The invitation emphasized that the group was for those who had personally experienced spiritual abuse, suggesting that Tears of Eden believed the false and disparaging accusations by the Accusers were true.

65. Also in July 2022, Spearing, in her individual capacity, and on behalf of Spearing's LLC, reached out to one of the Accusers to ask whether Spearing could use the Accuser's story regarding Herron in an article that Spearing was writing about narcissism. The Accuser agreed to let her story be included in the article under a pseudonym.

66. Defendants' actions resulted in multiple "occurrences" for purposes of their liability insurance policies.

11

67. Defendants' actions did not amount to any "business pursuit" or "business" as defined by her insurance policies.

## DEFAMATION

68. Herron incorporates by reference the allegations in the above paragraphs.

69. The Defendants defamed Herron to the extent the Defendants published, authored, and/or provided comment to others, within their Podcasts, blogposts, and other descriptions and re-publications of the same (collectively, the "Defamatory Assertions"), all of which contain false comments that were disparaging and intended to harm Herron.

70. The Defendants' comments in the Defamatory Assertions constitute defamation *per se* because they impugn the integrity of Herron's character and impute misconduct in Herron's profession and occupation and accuse Herron of sexual misconduct.

71. The Defendants' comments in the Defamatory Assertions have injured the reputation, esteem, respect, and goodwill of Herron and excited derogatory feelings and opinions about Herron. Moreover, the statements were made with actual malice or at least with reckless disregard.

72. Herron has suffered damages as a result of Defendants' conduct.

73. Further, the Defendants' defamatory statements in the Defamatory Assertions have interfered with Herron's present and future employment prospects.

74. The Defendants' Defamatory Assertions further resulted in damage to Herron's reputation.

75. The Defendants' comments, words and actions impugned the integrity of Herron's character and impute misconduct in Herron's profession and occupation.

76. The Defendants' comments, words, and actions have injured the reputation, esteem, respect, and goodwill of Herron and excited derogatory feelings and opinions about Herron. Moreover, the statements were made with actual malice or reckless disregard.

77. Defendants' actions have resulted in bodily harm, and caused Herron to lose sleep, have headaches, anxiety, and require medical attention.

78. Tears of Eden and the Board explicitly approved and adopted Spearing's defamatory comments. As such, they are jointly and severally responsible for Herron's damages.

79. Additionally, Tears of Eden and the Board negligently failed to supervise the actions of Spearing and Spearing's LLC and became responsible for their actions by virtue of endorsing and adopting Spearing and/or Spearing LLC's prior Defamatory Assertions on its own website and social media.

80. Similar to Spearing and Spearing's LLC, Tears of Eden and the Board failed to do any due diligence into the Defamatory Assertions before reposting the content on the Tears of Eden website under the Tears of Eden name and logo.

81. Defendants have interfered with Herron's present and future employment prospects.

82. Additionally, the Defendants' actions resulted in numerous others continuing and further spreading damaging content promulgated by Defendants.

83. Due to the actions of Defendants, Herron lost the opportunity for a pastoral posting and has suffered pecuniary loss.

84. Furthermore, Herron has suffered mental anguish and emotional distress due to the actions of the Defendants, resulting in further pecuniary loss through the services of a licensed counselor.

85. Upon information and belief, Defendants have spoliated evidence regarding the evidence of their wrongdoing and the extent of their activities.

### **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

86. Herron incorporates the allegations in the above paragraphs.

87. The Defendants acted intentionally to harm Herron and his family without legal justification.

88. Herron has suffered harm and incurred damages as the result of Defendants' conduct as stated herein.

89. Defendants conduct that injured Herron was not limited to "defamation" but also included communications directed to Herron's superiors in and throughout the PCA that sought to have Herron investigated, put on trial in his church, and among other things, removed from the ministry.

90. Herron lost a preaching position as a result of these actions, among other things, and was put on trial before the PCA's highest court, where he was acquitted in a unanimous vote of 22-0.

91. Although Herron was acquitted in the church trial, for which Defendants advocated, Defendants have refused to accept responsibility for their wrongdoing, they continue to assert the Accusers' false narratives in this action, attack Herron and his church, the PCA, and Herron continues to suffer from damage, loss and injury as a result.

92. Had Defendants simply investigated the facts before launching into their crusade, this need not have happened.

93. Taken as a whole, Defendants' conduct was intentional, extreme, and outrageous against Herron.

94. Defendants called for an investigation into Herron's pastoral position, attempted to get him excommunicated from the church and faith to which he and his wife had dedicated themselves, and permanently affected his personal and professional life moving forward all based on false claims.

95. This extreme conduct has caused Herron severe emotional distress resulting in bodily harm and damage, loss and injury as outlined above.

### NEGLIGENCE

96. Herron incorporates the allegations in the paragraphs above.

97. Tears of Eden, Spearing's LLC, and the Board breached duties of reasonable care in failing to supervise, monitor, and correct the actions of Spearing.

98. Spearing and Spearing's LLC used Tears of Eden's website, logos, materials, and platform to lend credibility to Defendants' false and damaging actions, and to amplify this damage.

99. Spearing admitted she did nothing to independently verify the accuracy of the Accusers' assertions, and Tears of Eden, Spearing's LLC, and the Board negligently failed to supervise, monitor, or otherwise oversee the damaging actions of Spearing in her personal crusade against Herron.

100. Defendants failed to preserve evidence and allowed evidence to be spoliated in this matter.

101. Herron sustained damage, loss, and injury as result of the negligence of Defendants.

### THE TORT OF OUTRAGE

102. Herron incorporates by reference the allegations in the paragraphs above.

15

103. The Defendants' pattern of intentional, malicious, tortious conduct towards Herron and his family stands so far outside the bounds of civilized behavior that it satisfies the high standard for an award of damages under the common law tort of outrage.

104. Defendants' conduct has been intentional, and inconsistent with mere negligence or other non-iniquitous human failing. Instead, it has been willful and wanton, and of such a nature as to warrant an award of punitive damages.

## NOTICE OF ALL CLAIMS AND CAUSES OF ACTION

105. Herron gives notice that he intends to bring all claims and causes of action that are available under the applicable law and that arise out of the facts set forth above.

WHEREFORE, Herron respectfully requests the Court grant judgment in his favor and against Defendants, award all appropriate damages (including, but not limited to, consequential damages) in the amount of his claim to be proven at trial plus interest, attorneys' fees, and the costs of this action, and provide all other relief just and proper in the premises. Herron also respectfully requests that the Court award punitive damages.

Respectfully submitted,

ICE MILLER LLP

*/s/ Brent W. Huber*
Brent W. Huber (#16077-53)
Robert A. Jorczak (#32027-29)

*Counsel for Plaintiff, Daniel Herron*

ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN  46282
(317) 236-2100
brent.huber@icemiller.com
louie.jorczak@icemiller.com

**Jury Demand**

Plaintiff demands that all claims in the foregoing Second Amended Complaint so triable be tried to a jury.

                      Respectfully submitted,

                      ICE MILLER LLP

                      */s/ Brent W. Huber*
                      Brent W. Huber (#16077-53)
                      Robert A. Jorczak (#32027-29)

                      *Counsel for Plaintiff, Dan Herron*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 19, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will notify all parties of record.

                      */s/ Brent W. Huber*
                      Brent W. Huber

ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN  46282

4897-5321-4298.4