**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| DANIEL HERRON,<br><br>*Plaintiff,*<br><br>v.<br><br>TEARS OF EDEN, KATHERINE SPEARING, LLC, KATHERINE SPEARING, TINA SHIM, JEANA ROTH, and MARIE GRIFFITH,<br><br>*Defendants.* | No. 4:24-cv-425-MAL |

**MEMORANDUM AND ORDER**

Before the Court are motions to dismiss filed by Defendants Marie Griffith, Tina Shim, and Jeana Roth. (Docs. 142, 157, 161). Also before the Court is Defendant Griffith's motion for leave to file successive Rule 12 motions (Doc. 208) and Plaintiff Daniel Herron's motion for partial summary judgment (Doc. 142). For the following reasons, all of these motions are **DENIED**.

**Background**

Here is the relevant background as alleged in the Second Amended Complaint (Doc. 130). Herron is an ordained Teaching Elder in the Presbyterian Church of America. (*Id.* at ¶ 21). He served as minister of Hope Presbyterian Church in Bloomington, Indiana. (*Id.*). Through his pastoral duties and ministry, Herron interacted with two individuals, Kara Million and Abigail Gschwend-Harris (the "Accusers"). (*Id.* at ¶ 22). According to Herron, these women pursued a campaign of harassment against him in which they falsely alleged that Herron directed sexual and predatory misconduct towards them. (*Id.*).

Defendant Katherine Spearing ("Spearing") invited the Accusers to talk on a Podcast dubbed the "Uncertain Podcast." (*Id.* at ¶ 23). The interviews with the

Accusers formed the basis for a three-part series entitled "Wicked Pastor of the Midwest" (the "Podcasts"). (*Id.* at ¶¶ 23, 30, 32, 34). Tears of Eden adopted the Podcasts as its own through corporate action, (*id.* at ¶ 43), and by posting them on its website between 2021 and 2023, (*id.* at ¶44). Moreover, both Spearing and Tears of Eden promoted the Podcasts through the "Uncertain" social media accounts (the "Advertisements"). (*Id.*).

The Podcasts and the Advertisements (the "Defamatory Materials") were defamatory, (*id.* at ¶ 69), and Spearing admitted that she did not perform any due diligence or speak with available fact witnesses before she joined in on the attack against Herron, (*id.* at ¶ 24).

Tears of Eden initially operated as an unincorporated association. (*Id.* at ¶ 2). It did not draw any corporate distinctions between the unincorporated association and the nonprofit corporation. (*Id.* at ¶ 40). It also did not wind down or cease its operations as an unincorporated association. (*Id.*). Defendants Spearing, Shim, Roth, and Griffith, were the association's members and board of directors. (*Id.* at ¶¶ 2, 25). Shim served as President of Tears of Eden, Roth served as Treasurer, and Spearing served as the Secretary. (*Id.* at ¶ 26).

The Board of Directors (the "Board")—which included Defendants Shim, Roth, and Griffith—failed to enact any journalistic standards or procedures to ensure that Tears of Eden's publications were factually accurate or otherwise credible accountings. (*Id.* at ¶ 28). The Board also failed to properly supervise and train Spearing in conducting editorial due diligence. (*Id.* at ¶ 29).

Finally, the Board approved of the Defamatory Materials. (*Id.* at ¶¶ 42–43). In a Board meeting conducted on August 18, 2021, the Board unanimously and explicitly approved of "All actions" by Tears of Eden, including the social media crusade at issue in this litigation. (*Id.* at ¶ 42). Through this corporate action, the Board also affirmed its failure to supervise and monitor Spearing's damaging conduct. (*Id.* at ¶ 43).

Herron now brings claims for defamation, intentional infliction of emotional distress, negligent supervision, and the tort of outrage against Tears of Eden, Spearing, and the rest of the members of the Board.

## Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged[,]" *Iqbal*, 556 U.S. at 678, "even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

"Ultimately, the burden is on the moving party to prove that no legally cognizable claim for relief exists." 5B Wright & Miller's Federal Practice & Procedure § 1357 (4th ed. 2026).

## Applicable law

To determine what law applies, the Court must employ the choice-of-law rules of its forum state, Missouri.[1] "According to long-settled precedent, a federal court sitting in diversity borrows the forum State's choice-of-law rule." *Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 115 (2022) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Thus, Missouri's choice-of-law rules determine what substantive law governs Herron's claims.

[1] That is true here even though this case was originally filed in Indiana. The United States District Court for the Southern District of Indiana transferred this case under 28 U.S.C. § 1631 after that court concluded it lacked personal jurisdiction over the original defendants in this case. That transfer statue commands that, after transfer, the action "shall proceed as if it had been filed in [ ] the court to which it is transferred[.]" 28 U.S.C. § 1631. So unlike transfers under 28 U.S.C. § 1404(a)—where a transferee court applies the choice of law rules of the transferor forum when the case is transferred for the convenience of the parties, *see VanDusen v. Barrack*, 376 U.S. 612, 639 (1964)—the normal choice of law rules apply, just as if this case was originally filed in this Court.

Missouri's choice-of-law rules direct courts to apply the substantive law of the state with the "most significant relationship" to the occurrence and the parties. *Fuqua Homes, Inc. v. Beattie*, 388 F.3d 618, 621 (8th Cir. 2004) (citing *Thompson by Thompson v. Crawford*, 833 S.W.2d 868, 870 (Mo. 1992)). In tort cases like this one, the state with the most significant relationship is determined by considering four factors: (1) "the place where the injury occurred," (2) "the place where the conduct causing the injury occurred," (3) "the domicile, residence, nationality, place of incorporation and place of business of the parties," and (4) "the place where the relationship, if any, between the parties is centered." *Fuqua Homes*, 388 F.3d at 621 (citing Restatement (Second) of Conflict of Laws § 145(2) (1971)).

"The Missouri Supreme Court has stated that in a defamation case where there is widespread dissemination of the allegedly defamatory matter, such as there was via the internet in the case before us, the most important consideration in choosing the applicable law is the residence of the party allegedly defamed." *Fuqua Homes*, 388 F.3d at 622 (citing *Elmore v. Owens–Illinois, Inc.*, 673 S.W.2d 434, 436–37 (Mo. 1984)). This is because "defamation produces a special kind of injury that has its principal effect among one's friends, acquaintances, neighbors and business associates in the place of one's residence." *Id.* at 622 (quoting *Elmore*, 673 S.W.2d at 437). In reaching its conclusion, the court in *Elmore* cited the Restatement (Second) of Conflict of Laws § 150 (1971), which notes a presumption that the defamed individual's domicile is the state with the most significant relationship. *See Elmore*, 673 S.W.2d at 436. Because Herron is an Indiana resident, (Doc. 130 at ¶ 1), that means Indiana law is presumed to apply to defamation claims here. *See Elmore*, 673 S.W.2d at 436.

For similar reasons, Indiana law also governs the other tort claims in this case. For tort claims, Missouri's choice-of-law formulation "essentially establishes a presumption that the state with the most significant relationship is the state where the injury occurred." *Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1358 (8th Cir. 1994); *see also* Restatement (Second) of Conflict of Laws § 146 (1971); *Winter v. Novartis Pharms. Corp.*, 739 F.3d 405, 410 (8th Cir. 2014); *Thompson,* 833 S.W.2d at

870. Here, Herron alleges that he was injured in Indiana, where he is domiciled, though the conduct causing the injury occurred in a number of states, as each individual defendant is a citizen of a different state. Because the relationship between the parties appears to not be centered anywhere physically, the Court determines that Indiana has the most significant relationship to the occurrences and parties at issue here. *Fuqua Homes*, 388 F.3d at 621. Accordingly, Indiana law governs.

## Analysis

### I. Tina Shim's Motion to Dismiss.

Defendant Tina Shim moves to dismiss all the claims against her for failure to state a claim (these claims include Count I – defamation, Count II – intentional infliction of emotional distress, Count III – negligence, and Count IV – Outrage) as well as moving to strike certain damages requests. (Doc. 157 at 1–3). The Court addresses each argument in turn.

#### a. Defamation

Shim first contends that the defamation claim against her must be dismissed because Herron is a public figure and he has not alleged that she acted with the requisite mental state of "actual malice." (Doc. 158 at 3–7). The Court is not convinced.

Shim's failure to conduct a choice-of-law analysis has led her to apply the wrong heightened scrutiny test (Missouri's rather than Indiana's). (Doc. 158 at 4). Under Indiana law, which applies here, a defamation plaintiff's public figure status (or lack thereof) is not determinative of the mental state required for an actionable claim. The actual malice standard applies "for matters of public or general concern, irrespective of whether the allegedly defamed plaintiff was a public or private individual." *Journal-Gazette Co., Inc. v. Bandido's, Inc.*, 712 N.E.2d 446, 452 (Ind. 1999).

Under Indiana-law's test, Shim fails to show that the actual malice standard applies in this case. Shim reasons that the actual malice standard applies here because "[i]t is axiomatic that one who starts a nationally recognized church, and who serves individuals in the community is considered a public figure." (Doc. 158 at 4).

But that falls short of showing that the statements at issue in this case are about "matters of public or general concern" for which the actual malice standard applies. Herron alleges he founded and served as a minister of a local church, not that he started "a nationally recognized church," as Shim proclaims. *Compare* (Doc. 130 at ¶ 21) (Second Amended Complaint) *with* (Doc. 158 at 4]) (Shim's Memorandum In Support of Her Motion to Dismiss). And it is doubtful that a statement about someone is necessarily a statement about matters of public or general concern just because that person "serves individuals in the community." (Doc. 158 at 4). *Cf. Connick v. Myers*, 461 U.S. 138, 149 (1983) ("To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case."). Without more, the Court declines to find that the actual malice standard applies at this stage of the case.

Even if that standard did apply, the Amended Complaint alleges that Shim and the rest of the defendants acted with actual malice. (Doc. 130 ¶ 71). "Actual malice exists when the defendant publishes a defamatory statement 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Journal-Gazette Co.*, 712 N.E.2d at 456 (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80). Because actual malice is a state of mind, it does not have to be pled with particularity. Fed. R. Civ. P. 9(b). But it still must be plausible. *See Iqbal,* 556 U.S. at 686–87 ("[Rule 9(b)] does not give [a plaintiff] license to evade the less rigid—though still operative—strictures of Rule 8") (quotation omitted). But all plausibility requires is that a defamation plaintiff plead "plausible grounds" to infer actual malice by alleging "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" actual malice. *Twombly*, 550 U.S. at 556. Herron has done so here.

Herron alleges that Shim and the rest of the Tears of Eden Board "unanimously and explicitly approved of 'All actions' by Tears of Eden … includ[ing] the Podcasts … and the social media crusade at issue in this litigation," (Doc. 130 ¶ 42), which were based on allegations of sexual harassment that the accusers themselves confirmed "were false and embellished," (*id.* ¶ 54), despite not having

"any journalistic standards or procedures to ensure that Tears of Eden's publications were factually accurate or otherwise credible accountings," (*id.* ¶ 28). Thus, in approving the actions of Tears of Eden, it seems plausible that Shim acted with reckless disregard for whether the statements in the Podcasts and social media posts were false. Thus, even if the actual malice standard applies in this case, the Court would not dismiss the defamation claim against Shim. The Court denies Shim's motion to dismiss the defamation claim against her.

**b. Intentional Infliction of Emotional Distress and Outrage**

Shim also moves to dismiss Herron's claims for intentional infliction of emotion distress and outrage. Because "intentional infliction of emotional distress" and "outrage" describe the same tort under Indiana law, *Doe v. Methodist Hosp.*, 690 N.E.2d 681, 691 (Ind. 1997),[2] Herron's separate "outrage" claim is dismissed as entirely duplicative of his claim for intentional infliction of emotion distress.

With respect to intentional infliction of emotional distress, Shim argues that, under Missouri law, conduct giving rise to defamation (or another traditional tort) cannot also be the basis for a claim of intentional infliction of emotional distress. (Doc. 158 at 7–9). As she puts it, to support a claim for intentional infliction of emotional distress, a plaintiff must plead (but does not here plead) that a defendant engaged in some conduct "only to cause extreme emotional distress" to the plaintiff. (*Id.* at 8). This argument fails for both intentional infliction of emotional distress and outrage, as "outrage" and "intentional infliction of emotional distress" define the same tort in Indiana, *see Doe*, 690 N.E.2d at 691.

Again, Shim's failure to conduct a choice-of-law analysis undermines her argument. Under Indiana law, there does not appear to be a categorical rule barring a plaintiff from bringing a claim for defamation and a claim for intentional infliction of emotional distress premised on the same conduct. In fact, in Indiana it seems fairly common for plaintiffs to bring defamation claims together with intentional infliction of emotional distress claims arising from the same events. *See, e.g.*, *McCollough v.*

[2] Abrogated on other grounds by *Cmty. Health Network, Inc. v. McKenzie*, 185 N.E.3d 368 (Ind. 2022).

*Noblesville Schools*, 63 N.E.3d 334, 339 (Ind. Ct. App. 2016); *Dietz v. Finlay Fine Jewelry Corp.*, 754 N.E.2d 958, 962 (Ind. Ct. App. 2001); *Bah v. Mac's Convenience Stores, LLC*, 37 N.E.3d 539, 541 (Ind. Ct. App. 2015); *Board of Trustees of Purdue Univ. v. Eisenstein*, 87 N.E.3d 481, 491 (Ind. Ct. App. 2017). Thus, the Court denies Shim's motion to dismiss the intentional infliction of emotional distress claim against her.

**c. Negligence**

Next, Shim moves to dismiss Herron's negligence claim, arguing that Herron failed to sufficiently allege that she owed him a legal duty. (Doc. 158 at 9–11). Shim fails to show that this is the case.

To allege negligence under Indiana law, a plaintiff must allege: (1) a duty of care owed by the defendant to the plaintiff arising out of the plaintiff's relationship with the defendant; (2) a breach of that duty; and (3) an injury proximately caused by the breach of that duty. *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991). As to the first element, a Court must consider three factors in determining whether to impose a duty of care: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns. *Id.*

Analysis of these factors is completely absent from Shim's motion to dismiss. Thus, she has failed to carry her burden to show that she is entitled to dismissal under Rule 12(b)(6). 5B Wright & Miller's Federal Practice & Procedure § 1357 (4th ed. 2026) ("the burden is on the moving party to prove that no legally cognizable claim for relief exists.").

Instead, her analysis focuses on the Restatement (Second) of Torts § 317. Because some Indiana courts do include this test as "part of the[ir] inquiry" in determining whether an employer has a duty of care to supervise an employee acting outside the scope of their employment, *e.g. Clark v. Aris, Inc.*, 890 N.E.2d 760, 763–64 (Ind. Ct. App. 2008), the Court will address this argument for good measure. Under Restatement (Second) of Torts § 317:

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his

> employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
>
> (a) the servant
>
> i. is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
>
> ii. is using a chattel of the master, and
>
> (b) the master
>
> i. knows or has reason to know that he has the ability to control his servant, and
>
> ii. knows or should know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts § 317.

Under this test, Herron's allegations plausibly support the conclusion that Shim had a duty of care to supervise Spearing. Herron alleges that "the Board [including Shim] breached duties of reasonable care in failing to supervise, monitor, and correct the actions of Spearing." (Doc. 130 ¶ 97). He further alleges that, in doing so, "Spearing … used Tears of Eden's website, logos, materials, and platform to lend credibility to Defendants' false and damaging actions, and to amplify this damage," (*id.* ¶ 98), and that, even though "Spearing admitted she did nothing to independently verify the accuracy of the Accusers' assertions … the Board [including Shim] negligently failed to supervise, monitor, or otherwise oversee the damaging actions of Spearing in her personal crusade against Herron," (*id.* ¶ 99). Those allegations show Spearing used chattels of the Board (Tears of Eden's website, logos, materials, and platform), that Shim had reason to know that she had the ability to control Spearing (being on the Board), and that Shim should have known of the necessity and opportunity for exercising such control (Spearing admitted she did nothing to verify the accuracy of the Accusers' assertions). Thus, the Court denies Shim's motion to dismiss the negligence claim against her.

**d. Pecuniary Loss and Punitive Damages.**

Finally, Shim argues that any request for pecuniary loss must be dismissed because, under Missouri law, such damages belong to the distinct tort of injurious falsehood rather than defamation. (Doc. 158 at 11–12). She also moves to dismiss

Herron's request for punitive damages because she contends that the Second Amended Complaint is devoid of allegations that she acted with actual malice. (Doc. 158 at 12). But categories of damages are remedies, not ***claims***. Thus, they are not an appropriate subject of dismissal under Rule 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6) ("failure to state a ***claim*** upon which relief can be granted") (emphasis added); *see also Amesquita v. Gilster-Mary Lee Corp.*, 408 S.W.3d 293, 305 (Mo. App. 2013) ("Punitive damages do not constitute an independent cause of action."). A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the pleadings, not the appropriateness of the relief sought. Shim's motion to dismiss Herron's request for pecuniary loss and punitive damages is denied.

## II. Jeana Roth's Motion to Dismiss

Like Shim, Defendant Jeana Roth moves to dismiss all claims against her for failure to state a claim as well as moving to dismiss Herron's punitive damages request. The Court addresses each argument in turn.

### a. Defamation.

Roth makes two arguments for why Herron's defamation claim should be dismissed. She argues that (1) Herron's defamation claim is time-barred and (2) fails to state the necessary elements. (Doc. 162 at 3).

First, Roth asserts that the claim is time-barred because it was brought against her more than two years after any of her alleged conduct. (*Id.*). The statute of limitations period for defamation claims under Indiana law is two years after the cause of action accrued. Ind. Code § 34-11-2-4(a)(1) (statute of limitations for "injury to person or character"). But Roth fails to account for the relation-back doctrine.

Under Federal Rule of Civil Procedure 15(c)(1)(B), an amended pleading relates back to the date of the original pleading when it "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Those requirements are satisfied here. Herron's original complaint was filed on May 15, 2023. (Doc. 1). And the Second Amended Complaint's claims against Roth arise from the same course of conduct and transactions at the core of this case and pled from the outset: the same podcast

making the same accusations about the same plaintiff. *Compare* (Doc. 1-1 at ¶¶ 8–31) *with* (Doc. 130 at ¶¶ 20–67). Therefore, the Second Amended Complaint relates back to the filing date of the original complaint, May 15, 2023. And because the relevant events are alleged to have taken place between May 18, 2021, (Doc. 130 at ¶ 30) (release of Part I of the Podcast), and July of 2022, (*id.* at ¶ 63) (invitation to Herron's accusers to participate in online community for survivors of spiritual abuse), the claims are well within the two-year limitations period.

Second, Roth argues that the defamation claim should be dismissed because Herron has not pled that Roth published a defamatory statement. (Doc. 162 at 3–4). But Herron alleges that Roth, as a member of the Board, approved of "All actions" by Tears of Eden, including the Podcasts and social media posts at issue—all of which were published through Tears of Eden's online accounts. (*Id.* at ¶¶ 42–44). If so, that supports the conclusion that Roth ratified the defamatory statements at issue, thereby rendering her liable for defamation. Thus, Roth's motion to dismiss the defamation claim is denied.

**b. Intentional Infliction of Emotional Distress.**

Next, Roth argues that the intentional infliction of emotional distress claim should be dismissed because Herron has failed to plead any allegations that she acted intentionally. (Doc. 162 at 4–6). Not so.

The Amended Complaint contains allegations that show Roth acted intentionally to cause Herron emotional distress. Herron alleges that Roth and the other Board members acted intentionally to harm Herron and his family without legal justification, including through communications directed to Herron's superiors throughout his denomination. (Doc. 130 at ¶¶ 87, 89). Herron also alleges that all defendants (Roth included), called for an investigation into Herron's pastoral position, sought his excommunication from the church, and permanently impacted his personal and professional life. (*Id.* at ¶ 94).

Therefore, Roth has not proven that the claim for intentional infliction of emotional distress must be dismissed.

**c. Negligence and punitive damages.**

Roth moves to dismiss the negligence claim against her, arguing (like Shim) that Herron has not pled that Roth had a duty to supervise, monitor, or otherwise oversee Spearing's action. (Doc. 162 at 6). Roth also moves to dismiss Herron's request for punitive damages just like Shim. (*Id.* at 6–7). Because these are identical arguments to those brought forward by Shim, the Court will not rehash its reasons for rejecting them. The Court declines to dismiss the negligence claim and the request for punitive damages for the same reasons it declined to do so with respect to Shim. *See supra* parts I.d. and I.c. Thus, Roth's motion to dismiss is denied in full.

## III. Marie Griffith's Successive Rule 12 Motions

Finally, Defendant Marie Griffith—proceeding *pro se* at the time—also moves to dismiss Herron's claims against her for failure to state a claim. (Doc. 142). Before this motion is addressed, however, some housekeeping is in order.

After Griffith filed her first motion to dismiss, she obtained counsel who filed a second motion to dismiss for failure to state a claim under Rule 12(b)(6) and a separate motion for a more definite statement under Rule 12(e). *See* (Docs. 205, 206). These motions should never have been filed. Rule 12(g)(2) says "a party that makes a motion under [Rule 12] must not make another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). The only pretrial motions excepted from that prohibition are motions for judgment on the pleadings and motions contesting subject matter jurisdiction. *Id.* (limiting further motions "[e]xcept as provided in Rule 12(h)(2) or (3)"); Fed. R. Civ. P. 12(h)(2)(B) (motions for judgment on the pleadings); Fed. R. Civ. P. 12(h)(3) (lack of subject matter jurisdiction).[3] Because these motions are not excepted from Rule 12(g)(2)'s ban on successive Rule 12 motions, and because nothing suggests that these motions raise defenses unavailable to Griffith at the time of her initial motion to dismiss, they are prohibited.

---

[3] Outside of those two exceptions, defenses not raised in a party's motion to dismiss under Rule 12 that could have been raised must be raised in a pleading or at trial. *See* Fed. R. Civ. P. 12(h)(2)(A) and (C).

Griffith's arguments to the contrary are not persuasive. Despite the clear prohibition on successive Rule 12 motions, Griffith asks for leave to file her successive motions under Rule 15(a)(2). (Doc. 208). That rule provides that—in the context of a party amending a ***pleading***—"[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Because pleadings and motions are not the same thing under the Federal Rules of Civil Procedure, *compare* Fed. R. Civ. P. 7(a) (pleadings) *with* Fed. R. Civ. P. 7(b) (motions and other papers), Rule 15(a)(2) provides no basis for Griffith bringing multiple Rule 12 ***motions*** in violation of the express ban on doing so.

Griffith also seems to ask for leave to file her successive Rule 12 motions on the basis that they would not be detrimental to judicial economy. (Doc. 208 ¶ 16). But the prohibition on successive Rule 12 motions is not discretionary or dependent on considerations of judicial economy. It is mandatory. *See* Fed. R. Civ. P. 12(g)(2) ("[A] party that makes a motion under [Rule 12] ***must*** not make another motion under [Rule 12]….") (emphasis added).

Therefore, the Court **denies** Griffith's motion for leave to file additional Rule 12 motions (Doc. 208), and the Court **strikes** the successive motions themselves (Docs. 205 & 206). As for Griffith's initial motion to dismiss (Doc. 142), the Court will address its arguments in full.

## IV. Marie Griffith's Motion to Dismiss

Defendant Marie Griffith's motion to dismiss (Doc. 142) raises five arguments for why Herron fails to state a claim against her. Liberally construing her motion, none of these arguments convince the Court to dismiss any claims.

### a. Griffith is alleged to have engaged in wrongdoing.

Griffith first contends that the Court should dismiss all claims against her because Herron does not allege any wrongdoing by her. (Doc. 142 at 2). Not true. Herron alleges that Griffith, along with every other board member of Tears of Eden, adopted defamatory podcasts and advertisements as their own by approving of "All actions" by Tears of Eden. (Doc. 130 at ¶¶ 42, 43). Herron also alleges that the Tears of Eden Board—including Griffith—failed to implement journalistic standards and

procedures for Tears of Eden and failed to supervise and train Spearing in conducting editorial due diligence. (*Id.* at ¶¶ 28, 29).

But what Griffith really seems to be complaining about is group pleading. In support of her argument that Herron does not allege any wrongdoing by her, Griffith cites *Robbins v. Oklahoma*,[4] an out of circuit § 1983 case, for the proposition that "conclusory group pleading is insufficient," (Doc. 142 at 2), presumably taking issue with Herron referring to Griffith and the other Tears of Eden Board member defendants in the Second Amended Complaint simply as "the Board."

But the kind of group pleading at issue here is permissible. Outside of alleging fraud or mistake, the Federal Rules do not require a party to plead with particularity. *Cf.* Fed. R. Civ. P. 9(b). All that is required is " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Here, the Amended Complaint's use of "the Board" to refer to similarly situated defendants does not deprive those defendants fair notice of what Herron's claims are and the grounds upon which they rest. Herron alleges that Tears of Eden operated as an unincorporated association which Griffith, along with Defendants Spearing, Shim, and Roth, were both members and directors of. (Doc. 130 at ¶¶ 2, 25, 27). And it is clear that "the Board" refers to Defendants Griffth, Spearing, Shim, and Roth. (*Id.* at ¶ 27). Thus, when Herron alleges that "the Board" engaged in specific wrongdoing, *e.g.*, (*id.* at ¶¶ 28–29, 42, 78–80, 97, 99), it is clear that Griffith herself—as well as Spearing, Shim, and Roth—are alleged to have engaged in that wrongdoing, providing each of them fair notice of what they are alleged to have done.

The problem in *Robbins*—a case that is not even binding on this Court—was that it was not plausible that the defendants grouped together engaged in the same conduct for purposes in § 1983 liability. In that § 1983 case, the *Robbins* court

[4] 519 F.3d 1242 (10th Cir. 2008) (J. McConnell).

thought that, "[p]resumably," the acts allegedly committed by the director of a state health department, a private daycare operator, and several individual social workers were "entirely different in character and therefore [] mistakenly grouped in a single allegation." *Robbins*, 519 F.3d at 1250. That is not the case here. "[T]he Board" clearly refers to defendants that were all similarly situated as Tears of Eden board members, and there is nothing to suggest that it is implausible that they engaged in the same Board-specific conduct. So there is no need to separately list out each board member defendant in every allegation of board conduct.

Accordingly, contrary to Griffith's claim, the Amended Complaint does allege that she engaged in wrongdoing.

**b. Griffth's factual arguments.**

Next, Griffith argues that the Second Amended Complaint fails to state a claim because she had no editorial role or oversight authority over the podcasts and only served on the board after all three podcast episodes at issue in this case had aired. (Doc. 142 at 3). The problem with these arguments is that they are just factual claims. And while they are welcome in a motion for summary judgment, they have no place in a motion to dismiss for failure to state a claim. At this stage, the Court is concerned only with whether the allegations in the Second Amended Complaint, assumed true, state a claim for relief. *Iqbal*, 556 U.S. at 678. Defendant Griffith's factual claims are irrelevant at this point.

The same goes for Griffith's naked assertion that "[c]ourts have routinely held that nonprofit board members are not liable for the speech or conduct of affiliates without direct involvement." (Doc. 142 at 3). If there is any authority to support this claim, the Court would like to see it. But even if there is, the Second Amended Complaint alleges that Griffith adopted the defamatory materials as her own, so her liability does not depend merely on her involvement with the creation of those

materials. Thus, these arguments fail to show that the Second Amended Complaint does not state a claim for relief.

**c. Griffith's duty argument.**

Third, Griffith argues in conclusory fashion that the negligence claims against her fail because "[t]he role of a nonprofit board member does not entail preemptive censorship of affiliated media or private social media posts." (Doc. 142 at 3). The Court can only guess at what exactly this is referring to. But in any event, the media and posts at issue in the Amended Complaint are not alleged to be solely the product of affiliated third parties. Instead, they are alleged to be the actions of Tears of Eden itself. *See* (Doc. 130 at ¶ 42). And the Court is not aware of a categorical rule against organizational directors having a legal duty to supervise their organization's own content production. Thus, the Court will not dismiss the negligence claims against Griffith on this basis.

**d. Griffith's heightened scrutiny argument.**

Fourth, Griffith says that she is not alleged to have made any false statements with malice. (Doc. 142 at 3). But Griffith does not explain why, if this is true, the claims against her should be dismissed. Regardless of what Griffith herself said or did not say, the Amended Complaint alleges that she adopted defamatory materials as her own. (Doc. 130 at ¶¶ 42–43). Because it is the Second Amended Complaint's allegations (not Griffith's) that matter at a motion to dismiss, *see Iqbal*, 556 U.S. at 678, the Court will not dismiss any claims against Griffith on this basis either.

**e. Griffith's argument that Herron's allegations are conclusory and insufficient.**

Finally, Griffith argues that Herron's allegations are conclusory and insufficient because there are no factual details supporting the adoption allegations. (Doc. 142 at 4). Specifically, Griffith contends that "[t]here is no record or documentation of [her] voting to adopt, publish, or ratify any … content" and that "[a]

single alleged board vote to approve 'all actions' lacks specificity and does not establish that [she] adopted or published defamatory statements." (*Id.*).

This smattering of arguments is unpersuasive. At the motion to dismiss stage, Herron need not prove that Griffith adopted a defamatory statement. He only must plausibly allege that she did. *Iqbal*, 556 U.S. at 678. Herron has done so here. The Amended Complaint alleges that Griffith, along with the rest of the Tears of Eden Board, "unanimously and explicitly approved of 'All actions' by Tears of Eden … includ[ing] the Podcasts at issue and the damaging social media crusade at issue in this litigation." (Doc. 130 at ¶ 42). That is a specific factual allegation that plausibly shows Griffith adopted defamatory statements. On summary judgment, Griffith is free to show that she did not adopt any defamatory statements. But at this stage in the litigation, the Court declines to dismiss the claims against her on this basis.

## V. Herron's Motion for Partial Summary Judgment

Before Defendants Shim, Roth, and Griffith were brought into this case, Plaintiff Herron moved for partial summary judgment against Defendants Spearing, Spearing LLC, and Tears of Eden. The motion sought summary judgment (1) that the original defendants' statements about Herron were false, (2) that Herron was not a public figure, and (3) that the original defendants were liable for defaming Herron. (Doc. 123 at 7, 9, 10).

Herron has not carried his burden to entitle him to such relief, however. "The court shall grant summary judgment if the movant ***shows*** that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). Though Herron asserts that there is no genuine factual dispute, and he asserts that he is entitled to judgment as a matter of law, he does not ***show*** these things. Herron's memorandum in support of his motion is almost entirely devoid of any citations to evidence. *See* (Doc. 123). And nowhere in Herron's memorandum in support of his motion does he support his assertions with

any uncontroverted material fact. (*Id.*). That will not do. To show summary judgment should be granted, Herron must support his assertions with evidence.

Accordingly, Herron's motion for partial summary judgment is denied without prejudice to refiling with properly supported assertions. *See* Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact … the court may … give an opportunity to properly support … the fact … or issue any other appropriate order."). Denying without prejudice to refiling is especially appropriate here where three new defendants were brought into the case after this motion was filed. *See* (Doc. 130). Yet Herron's Motion for Partial Summary Judgment could impact the liability of every defendant in this case because, for example, it raises the issue of whether the statements at issue touch on matters of public or general concern (and consequently, whether the actual malice standard applies). (Doc. 123 at 9–10) (arguing the Court should grant summary judgment on whether Herron was a public figure for defamation purposes). Therefore, the Court denies Herron's motion for partial summary judgment without prejudice to refiling.

**Conclusion**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Griffith, Shim, and Roth's respective motions to dismiss (Docs. 142, 157, 161) are **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Griffith's motion for leave to file a motion for more definite statement and supplemental motion to dismiss (Doc. 208) is **DENIED**, and that Defendant Griffith's successive Rule 12 motions (Docs. 205, 206) are **STRICKEN**.

**IT IS FINALLY ORDERED** that Plaintiff Herron's motion for partial summary judgment (Doc. 122) is **DENIED** without prejudice.

**SO ORDERED,**

This 3rd day of September, 2026.

Maria A. Lanahan

MARIA A. LANAHAN
UNITED STATES DISTRICT JUDGE